IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

LUFKIN DIVISION

| | | |
|---|---|---|
| JERRY WAYNE PIXLEY | § | |
| VS. | § | CIVIL ACTION NO. 9:21-CV-30 |
| DIRECTOR, TDCJ-CID | § | |

REPORT AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE

Petitioner, Jerry Wayne Pixley, an inmate currently confined at the McConnell Unit of the Texas Department of Criminal Justice, Correctional Institutions Division, proceeding *pro se*, filed this petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.

The above-styled action was referred to the undersigned magistrate judge pursuant to 28 U.S.C. § 636 and the Amended Order for the Adoption of Local Rules for the Assignment of Duties to the United States Magistrate Judge for findings of fact, conclusions of law, and recommendations for the disposition of the case.

Procedural Background

Petitioner is currently confined pursuant to a judgment and sentence in the 217th District Court of Angelina County, Texas. *The State of Texas v. Jerry Wayne Pixley*, No. 2018-0493-A (doc. #14-25, pg. 24). Petitioner was charged by indictment with manslaughter, with two prior felony convictions alleged for enhancement of punishment. *Id*. A jury found Petitioner guilty and assessed punishment at life imprisonment. *Id*.

Petitioner appealed his conviction and sentence which was affirmed by the Twelfth Court of Appeals on September 4, 2019. *Pixley v. State*, No. 12-18-00236-CR (Tex. App. – Tyler 2019, pet. ref'd) (doc. #14-1). Petitioner filed a petition for discretionary review with the Texas Court of Criminal Appeals ("TCCA") which was refused on October 23, 2019. *Pixley v. State*, PD-1018-19 (Tex. Crim. App. 2019) (doc. #14-8).

Petitioner then filed a state application for writ of habeas which was denied with a written order on the findings of the trial court without a hearing and on the court's independent review of the record. *Ex parte Pixley*, WR-91,258-01 (doc. #14-21). This federal petition followed (doc. #1).

## Factual Background

The following excerpt is taken from the appellate court opinion, summarizing the factual background:

> On or about September 6, 2016, Amie Nicole Malone Williams went to Appellant's trailer. Williams was a known drug addict, and it appeared she went to Appellant for that purpose. Appellant was known to prepare shots of methamphetamine and inject them into people. Appellant arrived at his trailer approximately thirty minutes after Williams. Appellant's trailer was located on William Baggett's property. Baggett saw Appellant and Williams leave the trailer approximately twenty minutes later and Williams appeared ill. Baggett testified that Williams tapped her chest and said that she could not breathe before falling to her knees. Appellant picked her up, put her into his vehicle, and left.
>
> Tiffany Brock saw a vehicle pulled over to the side of the road. Appellant was in the ditch performing chest compressions on Williams. Appellant told her that he picked Williams up on the side of the road and was taking her to the hospital because she could not breathe. When the emergency medical technicians (EMTs) arrived, Appellant claimed to not know Williams and that he picked her up on the side of the road. EMT Trent Waggnone testified that Appellant claimed he only knew the patient's name and that she had a history of heroin abuse. Therefore, Waggnone administered an opioid antidote called Narcan in an attempt to counteract the effects of heroin. The EMTs took Williams to the hospital.
>
> James Malone, Williams's father, learned that his daughter was missing and began calling the local hospitals. He learned that a "Jane Doe" had been dropped off at the hospital and he identified her as his daughter. He was told that "it wasn't good" and that she "had overdosed." Williams died at the hospital.
>
> Appellant was charged by indictment with manslaughter by introducing a controlled substance into Williams's body. The indictment alleged that the controlled substance used was capable of causing death or serious bodily injury. The indictment also included two enhancement paragraphs making Appellant eligible for punishment as a habitual offender.
>
> Appellant pleaded "not guilty" and the matter proceeded to a jury trial. Following presentation of evidence and arguments, the jury found Appellant "guilty" of manslaughter and found that a deadly weapon was used or exhibited during the offense. Following evidence and argument on punishment, the jury assessed punishment at life in prison. This appeal followed.

*Pixley v. State*, No. 12-18-00236-CR (doc. #14-1).

The Petition

Petitioner asserts the following points of error:

1. Ineffective assistance of counsel in (a) failing to properly investigate and prepare for trial, (b) failing to consult with Pixley on important decisions, (c) failing to interview alibis or witnesses from the address where Pixley administered CPR on the victim and where the 911 call was placed, (d) only visiting Pixley twice in preparation for trial, (e) making premature hearsay objections and failing to object to preserve error for appeal, (f) failing to request a mistrial when an expert witness testified that the cause of death was natural causes, and (g) failing to object to the jury charge not including a lesser included offense instruction;

2. The evidence was legally insufficient to prove causation, because the death certificate stated the cause of death was "natural causes;"

3. Trial court error by not including a lesser included offense of manslaughter in the jury charge;

4. Trial court error by allowing the victim's father to make a hearsay statement during trial by stating an opinion statement made by the victim's doctor;

5. He is actually innocent of the offense; and

6. The jail house snitches' testimony were lies.

The Response

Respondent filed an Answer on June 23, 2021, along with the state court records (doc. #13 and 14-1). Respondent argues Petitioner's claims are either unexhausted and procedurally barred or lack merit. *Id.* Petitioner filed a Reply, in the form of objections to the response, on July 30, 2021 (doc. #18).

Standard of Review

Title 28 U.S.C. § 2254(a) allows a district court to "entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).

Section 2254 generally prohibits a petitioner from re-litigating issues that were adjudicated on the merits in State court proceedings, with two exceptions. *See* 28 U.S.C. § 2254(d). The first exception allows a petitioner to raise issues previously litigated in the State court in federal habeas

3

proceedings if the adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). The second exception permits re-litigation if the adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). Federal habeas relief from a state court's determination is precluded "so long as fairminded jurists could disagree on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011).

Federal habeas courts are not an alternative forum for trying facts and issues which were insufficiently developed in state proceedings. *Williams v. Taylor*, 529 U.S. 420, 437 (2000). Further, following the Supreme Court's decision in *Cullen v. Pinholster*, federal habeas review under 2254(d)(1) "is limited to the record that was before the state court that adjudicated the claim on the merits." 563 U.S. 170, 181 (2011).

A decision is contrary to clearly established federal law if the state reaches a conclusion opposite to a decision reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *See Williams*, 529 U.S. at 412-13. An application of clearly established federal law is unreasonable if the state court identifies the correct governing legal principle, but unreasonably applies that principle to the facts. *Id.* Under this standard, an unreasonable application is more than merely incorrect or erroneous; rather, the state court's application of clearly established law must be "objectively unreasonable." *Williams*, 529 U.S. at 409. The focus of this objective reasonableness inquiry is on the state court's ultimate decision, not whether the state court "discussed every angle of the evidence." *Dale v. Quarterman*, 553 F.3d 876, 879 (5th Cir. 2008) (quoting *Neal v. Puckett*, 286 F.3d 230, 246 (5th Cir. 2002) (*en banc*)), *cert. denied*, 558 U.S. 847 (2009). "It bears repeating that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Richter*, 562 U.S. at 102.

The deferential Antiterrorism and Effective Death Penalty Act ("AEDPA") standard of review applies even where the state court fails to cite applicable controlling Supreme Court precedent or fails to explain its decision. *See Early v. Packer*, 537 U.S. 3, 8-9 (2002). Likewise, "[b]ecause a federal habeas court only reviews the reasonableness of the state court's ultimate decision, the AEDPA inquiry is not altered when ... state habeas relief is denied without [a written] opinion." *Schaetzle v. Cockrell*, 343 F.3d 440, 443 (5th Cir. 2003). For such a situation, a reviewing court (1) assumes the state court applied the proper "clearly established Federal law" and (2) then determines whether its decision was "contrary to" or "an objectively unreasonable application of" that law. *Id.* (citing *Catalan v. Cockrell*, 315 F.3d 491, 493 & n.3 (5th Cir. 2002)). "[A] federal habeas court has 'no authority to grant habeas corpus relief simply because [it] conclude[s] in [its] independent judgment, that a state supreme court's application of [clearly established federal law] is erroneous or incorrect.'" *Kossie v. Thaler*, 423 F. App'x 434, 436 (5th Cir. 2011) (quoting *Neal v. Puckett*, 286 F.3d 230, 236 (5th Cir. 2002)).

This court must accept as correct any factual determinations made by the state courts unless the petitioner rebuts the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e). The presumption of correctness applies to both implicit and explicit factual findings. *See Young v. Dretke*, 356 F.3d 616, 629 (5th Cir. 2004); *Valdez v. Cockrell*, 274 F.3d 941, 948 n. 11 (5th Cir. 2001) ("The presumption of correctness not only applies to explicit findings of fact, but it also applies to those unarticulated findings which are necessary to the state court's conclusions of mixed law and fact."). Deference to the factual findings of a state court is not dependent upon the quality of the state court's evidentiary hearing. *See Valdez*, 274 F.3d at 951 (holding that a full and fair hearing is not a precondition according to § 2254(e)(1)'s presumption of correctness to state habeas court findings of fact nor to applying § 2254(d)'s standards of review).

Analysis

I.   *Exhaustion*

Title 28 U.S.C. § 2254 allows a district court to "entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a state court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). As a prerequisite to obtaining relief under § 2254, a prisoner must exhaust all remedies available in the state system before proceeding in federal court unless circumstances exist which render the state corrective process ineffective to protect the prisoner's rights. 28 U.S.C. § 2254(b) and (c).

A prisoner has not exhausted remedies "if he has the right under the law of the State to raise, by any available procedure, the question presented." 28 U.S.C. § 2254(c). To comply with the exhaustion requirement, petitioner must fairly present his claim to the appropriate state court before filing a petition in federal court. *Picard v. Connor*, 404 U.S. 270, 275 (1971); *Morris v. Dretke*, 379 F.3d 199, 2014 (5th Cir. 2004). In Texas, all claims must be presented to and ruled on by the Texas Court of Criminal Appeals. *Tigner v. Cockrell*, 264 F.3d 521, 526 (5th Cir. 2001); *Richardson v. Procunier*, 762 F.2d 429, 431-32 (5th Cir. 1985).

A review of the state court records in this case reveals that Petitioner did not exhaust claims 1(f), 1(g), 3 and 6 as outlined above. Petitioner did not present these claims to the Texas Court of Criminal Appeals in his state application for writ of habeas corpus. *See Ex parte Pixley*, WR-91,258-01 (doc. #14-25, pgs. 4-21). As such, Petitioner has not exhausted state court remedies with respect to his federal habeas claims and these claims are procedurally defaulted. *Coleman v. Thompson*, 501 U.S. 722, 735 n.1 (1991). The normal rule that a state court must explicitly apply a procedural bar to preclude federal review does not apply to those cases where a petitioner has failed to exhaust his state court remedies and the state court to which he would be required to present his unexhausted claims would now find those claims to be procedurally barred. *Id*. In such cases, the federal procedural default doctrine precludes federal habeas corpus review. *Id*.; *see Nobles v.*

*Johnson*, 127 F.3d 409, 423 (5th Cir. 1997) (finding unexhausted claim, which would be barred by the Texas abuse-of-the-writ doctrine if raised in a successive state habeas petition, to be procedurally barred); *see also Emery v. Johnson*, 139 F.3d 191, 196 (5th Cir. 1997) (same).  Petitioner has also failed to allege, let alone show, cause and prejudice to overcome this procedural bar and has not shown actual innocence as discussed below.  Petitioner's claims 1(f), 1(g), 3 and 6 should be denied as unexhausted and procedurally barred.

## II. *Ineffective Assistance of Counsel*

As far as Petitioner's exhausted claims, Petitioner argues counsel was ineffective for: (a) failing to properly investigate and prepare for trial, (b) failing to consult with Pixley on important decisions, (c) failing to interview alibis or witnesses from the address where Pixley administered CPR on the victim and where the 911 call was placed, (d) only visiting Pixley twice in preparation for trial, and (e) making premature hearsay objections and failing to properly object to hearsay evidence.  For the foregoing reasons, all of Petitioner's claims of ineffective assistance of counsel should be denied.

### A.  **Substantive Law**

Federal claims of ineffective assistance of counsel are subject to the highly deferential two-prong standard of *Strickland v. Washington*, 466 U.S. 668 (1984), which asks: (1) whether counsel was deficient in representing Petitioner; and (2) whether counsel's alleged deficiency prejudiced the defense so as to deprive Petitioner of a fair trial.  *Id*. at 687.  To meet the first prong, Petitioner must establish that his attorney's representation "fell below an objective standard of reasonableness," and must overcome the "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, [he] must overcome the presumption that . . . the challenged action 'might be considered sound trial strategy.'" *Id*. at 688–89.  The "prejudice" component of the claim "focuses on the question of whether counsel's deficient performance renders the result of the trial unreliable or the proceeding fundamentally unfair." *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993).  Prejudice, under *Strickland*, requires showing that "there is a reasonable

probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*.

As discussed above, a federal court may not grant habeas relief on a claim that has been rejected on the merits by a state court, unless the petitioner shows that the state court's decision "was contrary to" law clearly established by the United States Supreme Court, that it "involved an unreasonable application of" such law, or that it "was based on an unreasonable determination of the facts" in light of the record before the state court. 28 U.S.C. §§ 2254 (d)(1) and (2); *Williams*, 529 U.S. at 412. Thus, when an exhausted claim of ineffective assistance of counsel is raised in a federal habeas petition, the question to be resolved is not whether the petitioner's counsel was ineffective. Rather, "[t]he pivotal question is whether the state court's application of the *Strickland* standard was unreasonable." *Harrington v. Richter*, 562 U.S. at 101. As the Supreme Court clarified in *Harrington*,

> This is different from asking whether defense counsel's performance fell below *Strickland's* standard. Were that the inquiry, the analysis would be no different than if, for example, this Court were adjudicating a *Strickland* claim on direct review of a criminal conviction in a United States district court. Under AEDPA, though, it is a necessary premise that the two questions are different. For purposes of § 2254(d)(1), an unreasonable application of federal law is different from an incorrect application of federal law. A state court must be granted a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself.

*Id*. (internal quotation marks and citation omitted).

**B. Application**

*1. Failure to Properly Investigate and Prepare for Trial*

Petitioner contends that trial counsel was ineffective for failing to properly investigate and prepare for trial (claim 1(a)), consult with Pixley on important decisions (claim 1(b)), interview alibis or witnesses from the address where Pixley administered CPR on the victim (claim 1(c)), and visit Pixley more than twice in preparation for trial (claim 1(d)).

> Trial counsel addressed Petitioner's claims in his affidavit provided to the state habeas court:
>
> Reasonable investigation - as shown by the attached correspondence counsel reviewed several video statements and recordings and summarized them for the defendant. Letter (May 14 2018) Further, counsel provided drug analysis results, evidence of prior convictions and extraneous offenses and bad acts, and states designation of expert witnesses. Further, counsel provided review of Gil Gonzales interview on June 7 2018 and summarization of his interview. (June 17, 2018 attorney letter)
>
> \*\*\*
>
> As to ground 4 of the defendants writ again concerning a duty to make a proper investigation and prepare for trial I would refer to the previous two letters and in addition I have attached a letter from June 20 2018 regarding a meeting I had with Mr. Pixley at the courthouse to review and answer all his questions. (June 20, 2018 attorney letter) Additionally, I would attach notes regarding the criminal history investigation of potential witnesses. As to the witnesses regarding Mr. Pixley's administering CPR on the victim witness Kayla Renfro testified concerning the drug relationship the defendant had with the victim prior to the 911 event. Mr. Steven Holt testified that prior to the 911 event the defendant was recruited to be a drug informant. A paramedic testified regarding the CPR event. Tiffany Brock testified as to being on scene of the 911 event and what actions she took in administering CPR to the victim. Trent Wagnon testified he was the EMT on scene. Therefore, witnesses did testify regarding the defendant's administration of CPR on the victim. I believe a review of my jury argument would reveal my strenuous argument concerning the defendant's actions concerning the 911 event.
>
> I recall speaking to the defendant's sister, but I certainly did not advise her nor the defendant that there was no evidence against him for trial. I strictly deny that there were only two ten-minute meetings as you can see in the previously submitted letter to the defendant, my office spent two weeks just watching video statements and preparing for the upcoming trial. I spent approximately 24 court hours and 62 hours on trial preparation. In addition, all though [sic] requested neither the sister nor any family member of the defendant attended the trial nor had any testimony concerning the event of the trial. I would estimate that I had four or five personal meetings with the defendant in regard to the case and spent at least 17 hours in trial with the defendant who did not request any additional witnesses. I would estimate I had 120 days to prepare for this trial.
>
> During the course of my representation I responded in person or by supplying evidence by letter to defendant's request by letters he sent on May 1 2018; May 21, 2018; May 31, 2018; June 7 2018; July 24 2018.

Affidavit of John D. Reeves (doc. # 14-25, pgs. 42-45)

While "counsel has a duty to make a reasonable investigation of defendant's case or to make a reasonable decision that a particular investigation is unnecessary," a reasonable investigation depends in part on the information supplied by the defendant. *Ransom v. Johnson*, 126 F.3d 716,

723 (5th Cir. 1997) (citing *Strickland*, 466 U.S. at 691). And, a petitioner alleging an inadequate investigation must show what such investigation would have uncovered and how the defense would benefit from that investigation. *Nelson v. Hargett*, 989 F.2d 847, 850 (5th Cir. 1993); *Lockhart v. McCotter*, 782 F.2d 1275, 1282 (5th Cir. 1986). Here, Petitioner fails to meet his burden, offering no specifics as to who the additional witnesses were and how their testimony or additional evidence would benefit the defense. Petitioner also does not specify what important decision trial counsel failed to consult him on.

In rejecting Petitioner's ineffective assistance of counsel claims, the state habeas court made a credibility determination in favor of counsel, and the statements made in the affidavit are presumptively correct under 28 U.S.C. § 2254(e)(1); *Austin v. Davis*, 876 F.3d 757, 778 (5th Cir. 2017). The TCCA denied the state application for writ of habeas corpus with a written order on the findings of the trial court without a hearing and on the court's independent review of the record. This is an adjudication on the merits. Petitioner, here however, presents nothing that would undermine the presumption of correctness to which the state courts' findings are entitled. *Valdez*, 274 F.3d at 946-47. Petitioner has also failed to demonstrate that his counsel's alleged ineffectiveness somehow prejudiced his trial or that but for counsel's alleged errors, the result of the proceeding would be different. *Strickland*, 466 U.S. at 693-94. This claim should be denied as Petitioner fails to show the state court proceedings resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States, or that the decisions was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.

>   2.   *Making Premature Hearsay Objections and Failing to Object to Preserve Error on Appeal(Claim 1(e))*

Petitioner argues counsel was ineffective for making a premature hearsay objection and then for failing to object to preserve error on appeal. Petitioner alleges that the Assistant District Attorney explained in his brief during the state habeas proceedings that counsel made a premature objection on hearsay, allowing Mr. Malone's testimony in court to "further get a conviction on Petitioner. "

According to Petitioner, Mr. Malone testified in court that two doctors told him that Amy Malone had overdosed and that this was clearly hearsay. Petitioner contends that counsel prematurely objected to this statement and it was, therefore, allowed. Petitioner argues that if counsel had "done this objection right" the hearsay evidence would not have been allowed and that the outcome of the trial would have been different.

In reviewing this point of error, the state habeas court found that trial counsel "was not ineffective," and "provided a legally sufficient defense for [Pixley.]." Findings of Fact & Conclusions of Law (doc. #14-25, pg. 27). Furthermore, in denying this claim, the state habeas court acknowledged the Appellate court's evaluation of trial court error for admitting the same evidence that Petitioner alleges trial counsel made inadequate objections. *Id*. The appellate court noted the following:

> Appellant contends the trial court abused its discretion when it overruled his hearsay objection to the following testimony:
>
> > Q. So can you tell members of the jury if they told you, the doctors, what was it that caused her death?
> > MR. REEVES: I'll object to hearsay, Your Honor.
> > MR. DIES: 804(e) present sense impression, Your Honor. I offer it for the truth of the matter asserted.
> > THE COURT: I'll allow it. Go ahead and answer the question. Repeat the question.
> > Q. (BY MR. DIES) What did they tell you she died of?
> > A. Overdose.
>
> However, Appellant did not object when James Malone first testified that hospital staff told him that his daughter overdosed:
>
> > Q. And then what next with Amie at the hospital?
> > A. They said it wasn't good that she was brought in. Had overdosed.
>
> To preserve error in the admission of evidence, a party must make a proper objection and obtain a ruling on it. TEX. R. APP. P. 33.2; *Valle v. States*, 109 S.W.3d 600, 509 (Tex. Crim. App. 2003). Furthermore, a party must object each time the allegedly inadmissible evidence is offered and obtain a ruling. *Valle*, 109 S.W.3d at 509. Because Appellant failed to object the first time Malone testified that he learned his daughter overdosed, any hearsay error was waived. *See id.*; *see also Jones v. State*, 111 S.W.3d 600, 606 (Tex. App. – Dallas 2003, pet. ref'd) ("any complaint concerning the admission of evidence is waived when a party fails to object to the same or similar evidence admitted at another point in trial.").

> However, assuming that Appellant's objection to hearsay was proper, any such error is harmless. Substantially similar evidence was introduced at trial, as such, the objected-to testimony is cumulative. *See* **Leday v. State**, 983 S.W.2d 713, 718 (Tex. Crim. App. 1998) ("overruling an objection to evidence will not result in reversal when other such evidence was received without objection, either before or after the complained-of ruling"); *see also* **Flores v. States**, 513 S.W.3d 146, 165 (Tex. App. – Houston [14th Dist.] 2016, pet. ref'd) (improper admission of testimony was harmless because same or similar evidence was admitted without objection elsewhere). In addition to Malone's testimony that he was told at the hospital that his daughter overdosed, one of the emergency medical technicians testified, without objection, that he reported the incident as a heroin overdose. Williams's medical records reflect that she was given an antidote for opioid overdose. And Dr. Mopur testified that too much heroin had been injected which caused the damage to Williams's brain, and eventually led to her death. As a result, we cannot say that the admission of Malone's testimony had a substantial and injurious effect or influence in determining the jury's verdict. *See* **Casey**, 215 S.W.3d at 885. Appellant's third issue is overruled.

*Pixley v. State*, No. 12-18-00236-CR (doc. #14-1, pgs. 9-10) (bold in original).

In sum, Petitioner has failed to overcome the strong presumption in favor of finding that trial counsel rendered adequate assistance and that the challenged conduct was the product of reasoned trial strategy. *See Strickland*, 466 U.S. at 689; *Wilkerson v. Collins*, 950 F.2d 1054, 1064 (5th Cir. 1992). Petitioner has also failed to affirmatively prove counsel's actions prejudiced his trial or that but for counsel's alleged errors, the result of the proceeding would be different. *Strickland*, 466 U.S. at 693-94. This claim should be denied as Petitioner fails to show the state court proceedings resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States, or that the decisions was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.

### III.   *Insufficiency of the Evidence*

Petitioner alleges there was insufficient evidence presented at trial to prove causation as the death certificate stated the cause of death was "natural causes." On federal habeas corpus review, the evidentiary sufficiency of a state court conviction is governed by the legal sufficiency analysis set forth in *Jackson v. Virginia*, 443 U.S. 307 (1979), which reflects the federal constitutional due process standard. *See Woods v. Cockrell*, 307 F.3d 353, 358 (5th Cir. 2002); *see also West v.*

*Johnson*, 92 F.3d 1385, 1394 (5th Cir. 1996) (explaining that, "in challenges to state convictions under 28 U.S.C. § 2254, only *Jackson* [*v. Virginia*] need be satisfied, even if state law would impose a more demanding standard of proof") (quotations and citations omitted). The standard for legal sufficiency review is that sufficient evidence exist from which a rational fact finder could find guilt beyond a reasonable doubt. *Jackson*, 443 U.S. 307. A federal habeas court must give great weight to a state court's determination of the sufficiency of the evidence. *Parker v. Procunier*, 763 F.2d 665, 666 (5th Cir. 1985). Applying the *Jackson v. Virginia* standard, the court of appeals addressed Petitioner's legal sufficiency claim:

> Applicable Law
>
> A person commits the offense of manslaughter if he recklessly causes the death of an individual. TEX. PENAL CODE ANN. § 19.04(a) (West 2019). "A person is criminally responsible if the result would not have occurred but for his conduct, operating either alone or concurrently with another cause, unless the concurrent cause was clearly sufficient to produce the result and the conduct of the actor clearly insufficient." *Id.* § 6.04(a) (West 2011). Under Section 6.04(a), a "but for" causal connection must be established between the defendant's conduct and the resulting harm. ***Robbins v. State***, 717 S.W.2d 348, 351 (Tex. Crim. App. 1986). Two possible combinations exist to satisfy the "but for" requirement: (1) the defendant's conduct may be sufficient by itself to have caused the harm, regardless of the existence of a concurrent cause; or (2) the defendant's conduct and the other cause together may be sufficient to have caused the harm. *Id*. If the additional cause, other than the defendant's conduct, is clearly sufficient, by itself, to produce the result and the defendant's conduct, by itself, is clearly insufficient, then the defendant cannot be convicted. *Id*.
>
> **Analysis**
>
> Appellant urges that the evidence is insufficient to support causation. Specifically, he contends the evidence is insufficient to establish that the victim died from a lethal drug injection.
>
> In support of his argument, Appellant relies on the testimony of Dr. James Mopur, the State's expert witness. Dr. Mopur reviewed Williams's medical records and prepared her death certificate. The certificate listed the cause of death as "natural" and did not include drug overdose as a contributing cause. When asked if he knew what caused Williams's brain to cease functioning, Dr. Mopur responded, "I don't know." Appellant contends that Dr. Mopur's inability to definitively state Williams died from a drug overdose negates causation.
>
> However, Appellant neglects other testimony and evidence introduced at trial. Kayla Renfro testified that Appellant told her that Williams "was in the hospital in a coma, and that he had shot her up, not once but twice with heroin." She and Appellant also had a conversation about "hot shotting." Renfro testified as follows:

> A. A hot shot is something you give someone when you want to hurt them.
> Q. How do you know that?
> A. I've heard a lot about it.
> Q. Okay. What's in the hot shot, if you know?
> A. Really anything. They can put anything in a hot shot.
> Q. What are some of things that you've known to be in a hot shot?
> A. Just a mixture of like – you can put meth with anything, or you can put heroin with anything. Just a number of things.
> Q. Okay. So he tells you that he did this to her twice?
> A. Yes, ma'am.

Renfro further testified that Appellant previously gave her $100 to purchase methamphetamine. Renfro gave the money to the supplier; however, Appellant never received the drugs and was angry. Approximately one week after Williams's death, Appellant left Renfro a voicemail that stated, "Well, undoubtedly, little Ms. Kayla, you haven't heard about the last motherfucker that fucked me over, but I suggest you just leave town." Renfro believes that Appellant's message was a reference to Williams because he had said Williams "snitched on him" previously and he went to prison for it.

Williams's father testified that his daughter told him that "Jerry Wayne Pixley said he was going to get her, and he was going to kill her because she snitched on him years before." Malone testified that the doctors told him that his daughter died of an overdose.[1]

Rebecca Fletcher testified that she went to Appellant's trailer to use drugs. While there, Fletcher asked Appellant if he killed "Amie Malone." Fletcher testified as follows:

> Q. Okay. What was his response?
> A. He said, yes, he did.
> Q. Okay. Did he give any details?
> A. Yes, ma'am.
> Q. Okay. Tell me about the details?
> A. He told me that he was trying to get her back for ten years prior she snitched on him, and that he said that he was trying to get her back. So that night he was trying to get her busted. So that night he took her over to the north side to get her stuff. He said the whole time he was testing his handler or whatever the cop that he was trying to get her busted with. And he never got no response, so whenever he went back. Whenever they went back, they made up the shots. She done one and she left with Shanon.
> Q. Okay.
> A. And then when she came back from Shanon's is when he gave her the other shot. And when she started saying she didn't feel good, that she couldn't breathe, he told her he didn't believe her. That she couldn't stay there; that she had to go and he would take her anywhere she needed to go, but she couldn't stay there.

---

[1] Even though the admissbility of this evidence has been challenged in Applicant's third issue, even arguably inadmissible evidence must be considered in determining the sufficiency of the evidence to support a conviction. *Porier v. State*, 662 S.W.2d 602, 605-06 (Tex. Crim. App. 1984) (en banc).

> Fletcher further testified that Appellant admitted to giving Williams a hot shot of methamphetamine and heroin. She stated that a hot shot is something you give a person to either scare or kill them.
>
> Williams's medical records indicated that she had opiates, heroin, and amphetamine in her system. Dr. Mopur testified that the medical records reflected her immediate cause of death as cardio-pulmonary arrest and her official cause of death was acute hypoxemic encephalopathy. Hypoxemic encephalopathy is neurological damage to the brain due to deprivation of oxygen, blood, or both for several minutes. According to Dr. Mopur, the records further reflect that a possible heroin overdose was involved and that Williams's urine tested positive for heroin, opiates, and amphetamine. Dr. Mopur testified that he could not say what caused the injury to Williams's brain, which caused it to stop functioning, but he also stated that opioid use could cause brain damage. He further stated that, hypothetically, a lethal dose of heroin, methamphetamine, or a combination of the two could have caused her brain damage. When asked, Dr. Mopur stated that, hypothetically, if Williams was given two hot shots of heroin, methamphetamine, or a mixture, it most likely could cause hypoxemic encephalopathy. Had he seen the injections and Williams fall to the floor, he would have been able to say that the injections caused her brain damage. He testified that there were "so many contributing factors which could have caused her death" and that it was difficult to choose a cause of death. However, he testified that too much heroin injected into the body "caused the initial damage to the brain that caused the edema" and, eventually, death.
>
> Accordingly, the jury heard evidence that Appellant told people that he gave Williams hot shots and that those shots led to Williams's death. The jury further heard evidence that hot shots can be a combination of heroin and other drugs and that Williams had heroin, amphetamine, and opiates in her system. In addition, evidence was presented that Appellant had a motive to harm Williams because of events that transpired in the past.
>
> Based on the evidence presented, the jury could reasonably conclude that Williams's death would not have occurred but for Appellant's injecting her with a hot shot. *See* TEX. PENAL CODE ANN. § 6.04. As sole judge of the weight and credibility of the evidence, the jury was free to believe or disbelieve any portion of the witnesses' testimony, and we presume the jury resolved any conflicts in favor of the prevailing party. *See* **Brooks**, 323 S.W.3d at 899; **Wooten v. State**, 267 S.W.3d 289, 296 (Tex. App.—Houston [14th Dist.] 2008, pet. ref'd). As a result, viewing the evidence in the light most favorable to the verdict, we conclude that a rational jury could have found, beyond a reasonable doubt, that Appellant recklessly caused the death of Williams by introducing a controlled substance into her body. *See* TEX. PENAL CODE ANN. § 19.04(a); *see also* **Jackson**, 443 U.S. at 319, 99 S. Ct. at 2789; **Brooks**, 323 S.W.3d at 912. Because the evidence is sufficient to support the jury's verdict, we overrule Appellant's first issue.

*Pixley v. State*, No. 12-18-00236-CR (doc. #14-1, pgs. 3-12) (bold in original). Thus, as the appellate court found, "the jury could reasonably conclude that Williams's death would not have occurred but for Appellant's injecting her with a hot shot," and that "a rational jury could have found, beyond a reasonable doubt, that Appellant recklessly caused the death of Williams by

15

introducing a controlled substance in her body. *Id,* at 6.

A federal court, on federal habeas review, "may not substitute its own judgment regarding the credibility of witnesses for that of the state courts." *Marler v. Blackburn*, 777 F.2d 1007, 1012 (5th Cir.1985). This court must give due deference to "the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Jackson*, 443 U.S. at 319. The evidence presented at Petitioner's trial was more than sufficient to support his conviction. The state court's determination was not an unreasonable application of clearly established federal law, as determined by the Supreme Court, and this claim should be denied as lacking in merit.

IV.   *Trial Court Error*

In his next point of error, Petitioner alleges the trial court erred by allowing the victim's father to make a hearsay statement during trial by stating an opinion statement made by the victim's doctor.

"A state court's evidentiary rulings present cognizable habeas claims only if they run afoul of a specific constitutional right or render the petitioner's trial fundamentally unfair." *Johnson v. Puckett*, 176 F.3d 809, 820 (5th Cir. 2009). The test to determine whether a trial error makes a trial fundamentally unfair is whether there is a reasonable probability that the verdict might have been different had the trial been properly conducted. The appellate court, here, as outlined above, determined that the introduction of the complained of testimony was harmless, without deciding whether the admission of the evidence was in error. The court of appeals issued "the last reasoned opinion" on this matter. Thus, this decision should be reviewed to determine whether the denial of the claim was contrary to, or an unreasonable application of federal law. As the state court found, the complained of evidence was cumulative. Thus, Petitioner has failed to demonstrate that the trial court's ruling rendered his trial fundamentally unfair, especially in light of the ample evidence of his guilt. Petitioner has not shown that in denying this claim, the decision that was contrary to, or involved an unreasonable application of, clearly established federal law, or resulted in a decision

16

based on an unreasonable determination of the facts in light of the evidence presented in state court. This claim should be denied.

V.     *Actual Innocence*

In his final point of error, Petitioner argues he is actually innocent of the offense because his conviction was based on insufficient evidence. It is well established, however, that a claim of actual innocence, standing alone, is not an actionable ground for relief on federal habeas corpus review. *See Herrera v. Collins*, 506 U.S. 390 (1993) ("Claims of actual innocence . . . have never been held to state a ground for federal habeas relief absent an independent constitutional violation occurring in the underlying state criminal proceeding."). As Petitioner has failed to show an independent constitutional violation, his allegation of actual innocence does not state a federal habeas ground for relief.

Furthermore, Petitioner's actual innocence claim lacks merit. "Actual innocence means 'factual innocence and not mere legal sufficiency.'" *United States v. Jones*, 172 F.3d 381, 384 (5th Cir. 1999) (quoting *Bousley v. United States*, 523 U.S. 614, 623 (1998)). "To establish actual innocence, petitioner must demonstrate that, 'in light of all the evidence,' 'it is most likely than not that no reasonable juror would have convicted him.'" *Bousley*, 523 U.S. at 623 (quoting *Schlup v. Delo*, 513 U.S. 298, 327-28 (1995)). Further, a substantial claim that an actually innocent person was convicted due to constitutional error is extremely rare, and requires new reliable evidence to support such an allegation. *Schlup*, 513 U.S. at 324.

Petitioner here does not allege any new evidence. Rather, he alleges that evidence at trial was insufficient to convict him which is akin to his legal sufficiency challenged discussed above. As a result, Petitioner's claim of actual innocence should be denied.

## Recommendation

This petition for writ of habeas corpus filed pursuant to 28 U.S.C. § 2254 should be denied.

<u>Objections</u>

Within fourteen (14) days after receipt of the magistrate judge's report, any party may serve and file written objections to the findings of facts, conclusions of law and recommendations of the magistrate judge. 28 U.S.C. § 636(b)(1)(c).

Failure to file written objections to the proposed findings of facts, conclusions of law and recommendations contained within this report within fourteen (14) days after service shall bar an aggrieved party from *de novo* review by the district court of the proposed findings, conclusions and recommendations and from appellate review of factual findings and legal conclusions accepted by the district court except on grounds of plain error. *Douglass v. United Services Auto. Assoc'n.,* 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc); 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72.

SIGNED this 28th day of February, 2024.

_____
Zack Hawthorn
United States Magistrate Judge